Good morning, everyone. Welcome to the Eleventh Circuit. This is a treat for me. This is my first time, first week to preside over a session of this court. The good news for you is that yesterday's lawyers were the real guinea pigs. You get day two. So yesterday I actually said be seated before Ms. Geddes had done her hear you, hear you, which was a little embarrassing. So at least today I got that right. First order of business for Judge Hull and myself is to welcome our visiting colleague, Judge Ashley Royal, to the court. Judge Royal sits on the Middle District of Georgia. He has sat with this court before, so he knows exactly what he's doing. He is, as I understand it, a triple dog, having received his bachelor's and master's and law degree from the University of Georgia. He has the distinction of having worked both sides of the criminal justice system, which is interesting, both as an assistant DA and as a public defender. He had a very distinguished career in private practice before being appointed to the district court bench, and we're thrilled to have him with us. Thank you for your service. Second order of business, a couple of ground rules. First, please understand that we've read your briefs. We've read the underlying cases. We've read the pertinent portions of the record. So there's no need for you to recap facts or procedural history. We've got it. Just proceed directly to legal points that you want to emphasize. Second, very briefly about our traffic light timing system, green, yellow, red. You'll see the red light go off. There's no need to stop mid-sentence, but just begin to bring your presentation to a close, and if you go on too long, we'll let you know. All right. So we only have three cases this morning. The first case is 17-11-002, Jones v. the United States Attorney General. We have Mr. Osorio here for the appellant, Mr. Osorio, you may proceed at your pleasure. Good morning, Your Honors, and may it please the Court. My name is Ben Osorio, and I represent the petitioner in this case, Ms. Dionne Jones. This case comes to the Court from a split decision at the Board of Immigration Appeals affirming the Immigration Court's decision that she had been convicted of an aggravated felony. Her conviction was under OCGA 16-13-31, and the Board of Immigration Appeals, when affirming that conviction, looked at that and said that they agreed that you could infer an intent to distribute into the statute even though it was not explicitly there. So there are three things that both the government and I can agree on. One, the statute is indivisible. That's never been contested here, and I think that the Court's recent decisions in Cintron and Ulloa Francisco have confirmed that that's the approach that should be taken. That the number of different alternative ways to complete the offense that are listed in the beginning are means, not elements. The second thing that we agree on is that an intent to distribute is not explicitly present in the statute anywhere. So if we're going to get there, you have to infer it. And the third thing that we agree on is that if possession is the minimum conduct, that that would not be an aggravated felony. Drug trapping offense is defined by the INA and as given to us in the Supreme Court decision of Lopez. So can I ask you a question? I think one of the toughest things about this case for me is trying to square up what the Georgia courts have said about these statutes. You've got on the one hand Moran and Hancock, which seem to say you can prosecute and convict someone without proving intent to distribute. And then you've got cases like Jackson that say there's really no difference between these crimes in terms of elements, using the word element specifically. How do you square those up? So I think that the Supreme Court and Mathis and Decomp have saved us that trouble and said, look, we don't really care what the state calls an element. We don't care what the state calls an offense. Obviously, we all know that this offense is called trafficking. I mean, that's the title of the statute at issue here. But we care about what the elements that a jury must necessarily find beyond the reasonable doubt and what the state has to prove. So Jackson is confusing in itself. If you look at page 905 in discussing, because he's contesting both his trafficking conviction and the possession with intent to distribute conviction. In the trafficking conviction, it says, no, no, a reasonable fact finder could have found, you know, based off the evidence presented, that you possessed over 28 grams of cocaine. And that's all that's needed to sustain a conviction. And then later on, going to the government's point, they come in and say, OK, well, actually possession with intent to distribute merges. But I think that's consistent with the Supreme Court's decision in Decomp saying there are many ways to complete this offense. And again, adopting the Moncrief approach, we have to look at what the minimum conduct is here. So in Moran, you know, it included intent to distribute in his actual indictment. And so he's complaining and the defendant's saying, look, they never, the state never proved intent to distribute. And the Georgia court said, well, he didn't have to. You know, the state never had to prove it. They never had to allege it. So the conviction is fine. And then you've got the later case of Hancock and the defendant's complaining that, you know, he didn't knowingly possess over 28 grams of cocaine. And he's contesting all these factors that the Georgia courts come back and say, no, no, those go to intent to distribute. And intent to distribute is not something that the state has to prove. And that answers our question. Now, Georgia, if you look at its case record, they've struggled with this lesser included, what the actual means are, what was required. So they've gone from an actual evidence standard and then gone to the required evidence in Drinkard in 2006. So I think their struggle does not affect what we are looking for here under the categorical approach and our definition in the INA. And so since Georgia has been consistent in saying, you do not have to prove an intent to distribute, I think we're done there. And I'm sorry. No, no, no. That's brilliant. Wow, you saw me inhale and you stopped. That's really impressive. So what's your best response to the other side's point that it's just bizarre that you would have the second order criminal, let's say, committing an aggravated felony because of the with intent to distribute element, but the third order or worse, let's say, criminal not committing an aggravated felony without that element. And add on top of that, that Jackson says that they were merged because one crime was included in the other. So I've got the jury verdict here. They found your client guilty of possession with intent too, correct? Yes. Okay. So that has an intent element. And they said that merged into the trafficking offense because it was lesser included. Right. So take that question on top of what Jackson says. So I think the best, and so Judge Hull, you wrote Madera, Madera. And in there, you contemplated the exact question that Judge Newsom is asking. You know, this would be an anomaly. We've got a three-tiered structure here. We've got possession, we've got possession with intent to distribute, and we've got trafficking as laid out in White, in Alabama, in James, in Florida, and Madera for the Georgia statutes. And we also said DeCamp doesn't matter to all this. It doesn't undermine the reasoning. Right. And That's our precedent that we have to follow. DeCamp doesn't matter here. What I would say here is that Cintron and Ulloa Francisco are the exact same statute at issue in James. In James, there's a robust discussion of James in White. And so 893.135, the Florida statute, that is worded the exact same as the Georgia statute. The structure is the same. The wording is almost identical except for the switch of the controlled substance. And so this Court had to contemplate the same thing in Cintron and Ulloa Francisco. And I think that those cases control here. And the reason that Madera, Madera, and White don't control here, number one, those are not under the Immigration and Nationality Act. We have an entirely different definition of what a drug trafficking offense is under the INA. And that's given to us in Lopez. So Madera, Madera specifically states we don't care about the elements. We care about the type of offense. That's what it says in Madera, Madera. That's the opposite of what we care about here. Here, we only care about the elements of the offense. And then in White, this Court discussed, well, the definition of a serious drug offense under the ACCA includes this word involving. And by using the word involving, it specifically says it's going to be broader than the definition of a drug trafficking offense. And so I think this Court has already resolved both of those things in our favor. This is an I agree you can distinguish White and Madera, Madera. I also think you can distinguish Cintron in the other case you said. So the question is what do we do here? And the problem I have is we say we expressly rejected the reasoning that there's no intent and that the statute infers an intent on this same statute. Right. Okay. So we went to the elements and we said it infers an intent. If you look at the statutory three-tier system and you look at Georgia law, so we've kind of, I know it's DICTA because it's under, I think, the guidelines or whatever. Right, the sentencing guidelines. Sentencing guidelines. So I realize it's not the INA. Right. But we looked at this statute. I'm trying to see how we write around it. And that's what we said. So I think the answer is The statute infers an intent when you look at the statutory scheme and you look at the case law. So I think the answer is found in Vassil. So this Court In what? In Vassil v. Holder. So it's a 2016 case where this Court examined and discussed in my brief that this Court looked at the Georgia theft by taking statute. And so the federal generic definition in Gonzalez-Duenas-Alvarez says that you have to have a taking without consent. Now, exactly like the Georgia case law was confusing in that case, the Georgia courts have specifically stated in the case law that the taking without consent was the grabberman of the offense. The grabberman of the offense. And this Court pushed back at the end finding that it wasn't an aggravated felony theft offense because we don't care about what the grabberman of the offense is under the categorical approach. We only care about the elements. And so I think if we're going to do an elements-based approach, we have to look at the elements as defined by Decomp and Mathis. And those elements have to be what a jury must find beyond a reasonable doubt. There has to be jury unanimity on the issue. And if there's not, the analysis is done. And I understand, again, that we're going to end up coming out with this anonymous result. However, I think this Court can rest easy knowing that this person is still going to be an offense related to a controlled substance. They're still going to be removable. So an immigration judge is going to have to come back and look at this offense and say, is this a serious enough offense to remove this person from the country? Or is it really inconsequential when we do? Because at that point, they can adopt a circumstance-specific approach. Can you explain what you just meant by they're going to be removable anyway? That wasn't the ground, the controlled substance wasn't the serious drug offense ground they brought? So there were a number of different categories of removable. So she would still be removable as having a controlled substance offense. So anything related to a controlled substance offense would remember you removable. And so why are we here then? She doesn't contest the aggravated felony. The aggravated felony drug trafficking conviction would disqualify her from eligibility. Eligibility for discretionary relief. Okay. So she's removable anyway, but the question is whether she gets discretionary. I remember that now. Right. And so I think this Court can rest easy. Yes, we're creating an anomaly, but there have been consistent anomalies. Back to the matter. They could do what they want to do right now, even if it is an aggravated felony. They do it all the time. The Attorney General has discretion, even right now, not to remove her. Right? Well, typically, I mean, there's no waiver available for a drug trafficking offense. I understand there's no statutory relief, but this happens all the time. Don't they have discretion now not to remove her? There's no form of relief that she would be available to apply for. But yes, I think the Attorney General, under his own discretion, could decide to stay her removal and not remove her from the country. And I assume that's happened. Is she removed? She's in Jamaica, Your Honor. She's already been removed. Yes, Your Honor. Okay. And so if this Court was to grant relief, send it back to the Board, at some point we would bring her back. Our office has done it before. Right. I understand. Can I ask you a quick question just before we run out of time? All of the discussion in the briefing and below really was about whether this is a drug trafficking crime. Right. Has anybody given any thought to whether this is illicit trafficking, which I take to be the umbrella term, one aspect of which is a drug trafficking crime? Right. And I think that was addressed recently in Schwozome, which was before this Court. And, you know, nobody really, there's never been a clear guideline definition of what illicit trafficking is. What that has always been defined to be is to have a commercial element. And again, if we're looking at the minimum conduct here... I can't pronounce the case, but Schwozome, however you say that, says it's got to be a commercial purchase and so forth. Right. And why they didn't proceed under that is that's even more problematic than this issue. Right. And so if there's no commercial element, and again, everybody's, if the minimum conduct is possession, there is no commercial element. No sale, delivery, anything. That's why that one's not going to work for the government. And I think we have to look at this. The Georgia legislature has chosen to make this easy for very broad. And so what's bad for criminal defendants tends to be good for immigration respondents. And I'd like to reserve the rest of my time for rebuttal. Yep. Very well. Thank you. Thank you. Mr. Newell. Good morning. May it please the Court. My name is Craig Newell, and I'm here on behalf of the Attorney General. The only outstanding dispute in this case is whether the act of possession with intent to distribute is covered, is necessarily part of the Georgia trafficking offense. And yes, there's no explicit term of possession with intent to distribute. But the statute is not to be examined in a vacuum. We need to look to the Georgia courts to see how they have interpreted and treated its own statute. And the element of possession of the designated quantity of cocaine has been interpreted as necessarily including the conduct of possession with intent to distribute. So what do you then do? I'll ask you the reverse of the question I asked your adversary. What do you do with cases like Moran and even more so Hancock? Because in Hancock, the guy is acquitted of possession with intent to distribute and then is convicted of the third-level offense, the trafficking offense, over an argument that no, I can't be convicted for this because there's no with intent to distribute element, and the Court says no matter, not required. Yes. I think those two cases, the Moran and Hancock, are not as dispositive as Ms. Jones emphasizes. Hancock, from my research of Georgia case law, is the only case I could find where someone was acquitted of possession with intent to distribute but was found guilty of the trafficking. And that does seem like an anomaly. But the key point that Ms. Jones takes from that point that possession with intent to distribute is not part of the trafficking offense comes from, I think, a quirk of Hancock. So in Hancock, he argued his sole argument on appeal was that he did not knowingly possess the trafficking amount. So he's not even raising something about possession with intent to distribute. He's saying, I dispute that I had possession of the 28 grams. And what he does is he cites this case, another Georgia Court of Appeals case called Greenby State, and he seems to cite it because it has a very similar factual scenario as his where in his case, when the cops approached him, he threw the cocaine out of his car. And in the Green case, the person threw the drugs away when the cops were approaching. And so when the Court addressed his argument, they first said, they said that this Green is not applicable. That's possession with intent to distribute case, and here you only have to prove the 28 grams. So that's where that comes from. But the real resolution is he was disputing, the jury did not believe his testimony that, you know, Hancock said someone threw the drugs at him and then he threw them out the window. So he never had possession of 28 grams. And the court says, no, you know, that the jury would have to defer to their determination on credibility. Hancock is really an anomaly, and you take it in the face of, I mean, Jackson and Praval and the Gilbert case, I mean, those specifically say that the only element that's additional to the trafficking is the amount. They are the same. There's nothing included in the possession with intent to distribute offense that's not included with trafficking. You cannot be convicted of one without the other. But you agree, right, that we are charged with looking solely at the elements, right? Yes. And you agree that in Mathis, the U.S. Supreme Court says what we mean by element is a fact required to be proven beyond a reasonable doubt and found by a jury, as distinguished from a fact, which is something that defines conduct but isn't required for a verdict, right? Right. And then you agree that Moran and Hancock both say very clearly there is no requirement in the statute that the state either allege or prove that the defendant had an intent to distribute cocaine. So the least required conduct, which Moncrief says we have to look at, does not include. You don't have to prove that to convict this guy. You don't have to prove intent to distribute to convict this guy. And that's the element as defined by Mathis. Right. And in Mathis, when they talk of element, it's something that the jury has to find beyond a reasonable doubt. And they distinguish it from, like you said, what Justice Kagan called the brute facts of these mere real-world things. But with respect to this, given that Georgia case law, the conduct of possession with intent to distribute is not just this inconsequential thing. It has a legal effect and consequence. That's what an element is. But not to a verdict, right? Because the Georgia Court of Appeals has said several times, prosecutor, don't worry. You don't have to prove that. You don't have to prove that. Right? So it might be a fact of some legal consequence, but not to a verdict. But by proving that, the prosecutor has proved both that the person has committed trafficking and the lower-level possession with intent to distribute, as what happened here in Ms. Jones' case. She was convicted of both, and then the trial court judge merged the two convictions. I'm looking at Jackson. In fact, they talk about that. And says, we've already held intent to distribute is necessary to the crime of possession. And it's satisfied by the reasonable inference. And it goes on, and it says, therefore, the distribution offense, that is, the possession with intent to distribute, quote, contains no unique elements not satisfied by the trafficking offense. And the distribution offense was included in the trafficking offense. And then it actually cites Hancock. I mean, I don't know how to read Hancock, but that's how they read Hancock. It's so interesting. It's their own precedent. Some people in Georgia say, if you keep looking long enough, you'll find a Georgia Court of Appeals case. Because they're so, they're the heaviest, busiest court of appeals in the country by case. You know, it's hard to reconcile some of these cases. Let me suggest what you argue is, we don't have to decide if they're only convicted of trafficking. Here, we know the jury. We have a fact-finding of intent to distribute it, and they merged the two so she didn't have two sentences to her benefit. And we don't need to worry about what happens when there is no jury finding of intent to distribute. This is a narrow case. Here with this particular jury verdict, you're okay. That's the best I can think you could possibly argue. That is correct, Your Honor. I agree. Rather than a general principle. So can I ask just a follow-up question? And I truly, it's because I'm ignorant of this learning. But in a categorical rule case, can we look beyond the face of the statute to the ancillary documents, the jury verdict form and the like? Yes. In Mathis, the Supreme Court advises that you need to look to authoritative sources of state law. The best would be something from the Georgia Supreme Court. We do not have something exactly there from the Georgia Supreme Court, but we have this body of case law from the Georgia Court of Appeals. In both the lesser-included offense and that, Georgia now, because of that Drinker case, does the required evidence test. And I know that the double jeopardy analysis is not exactly the same, but it has a similar, you know, if you're looking at whether both offenses require the same proof of something. And if something is off, then there's not a double jeopardy violation. But when they're the same, there is. And so if we were to take Ms. Jones' reading and say that possession with intent to distribute, that second level case, had this unique intent to distribute element, that it could not be a lesser-included of the trafficking. Because the trafficking doesn't, if you continue on Ms. Jones' interpretation, does not have it. And that's why Jones and Praval say that. And then I think the Gilbert case is also interesting. That comes more in the, so Georgia has a sentencing enhancement part of the statute. For someone who's been convicted of two possession with intent to distribute crimes. And so Gilbert, he had a prior conviction for trafficking, the highest level, what we have here. And the case at bar there was he had a conviction for possession with intent to distribute. And the trial court enhances sentence based on that prior trafficking. And Gilbert argues that the court couldn't do that. My trafficking didn't include a possession with intent to distribute. It can't be used as the enhancement. The statute says it needs to be a possession with intent to distribute. And Gilbert, using the same logic as the lesser-included case law of Praval and Jackson, said that the intent to distribute, which is necessary for the crime of possession with intent to distribute, is satisfied by that same inference. And so then the trafficking, a prior trafficking offense can be used to enhance the sentence. And that shows that there is a legal consequence in effect here to this phrase possession of X quantity of drugs that goes beyond the mere face of the statute. And that's why we need to explore what the state courts have said about it. They are the ultimate expositors of their own, their state's laws. Let me just ask a quick question, just to make sure I've got this straight. So I understand the argument we're having about the text of the statute and what the Georgia courts have said. But to Judge Hull's question earlier, she was saying, you know, my suggestion is that your better argument is that never mind in this case because we've got a jury finding, look at the jury verdict. And my question was, in a categorical rule case, can we look at that stuff? What's the answer to that question? Yes. Yes. Okay. Because the Well, first of all, there's a great line in math that says some cases where the Georgia statute, we know how the appellate courts are, it's totally clear. You can also have a quote, unquote, peak at very limited documents such as the jury verdict or the jury instruction, you know, or the something. They use this peak language. Yes. And I, and that is why It's right in there. In my brief, why I put to look at what happened in Ms. Jones' case. I mean, the peak is a way, when you don't have something right on point from the state courts, the peak is really helpful to see how the statute works in practice. And here you see what happened, that she was convicted of both. They merged. She was charged with both under Georgia law. The prosecutor, if it's known at the time, is required, if he knows there's two crimes that could arise out of one incident, that he needs to charge them. And that's what happened here. And then they just merged. And on the other end, the defendant And in fact, I'm not really sure we have to go so far as the jury verdict. We know from the state court record that she was convicted. I mean, nobody's really disputed that here. No. And it merged into the trafficking. Yes. What struck, I'm sorry. What struck me as odd about this case is we've had all this discussion about the statute, but the indictment doesn't track the statute the way I read it. In other words, it is in terms of trafficking, in terms of a certain amount. But there's not anything in particular in the indictment that ties it to the statute. Obviously, the jury in this case found that the indictment was supported by the evidence and there was a conviction on the trafficking charge. Now, the way I read these Supreme Court cases is that the big problem that they're trying to avoid is this large-scale faxy, you know, trying to go back and find out, happened at a plea colloquy or something that happened 10, 15 years ago. But in this particular case, the indictment is clear about what she was convicted of as trafficking. I don't understand how trafficking cannot have an intent component to it. How can you, and I'll give you the opportunity, I hope you'll respond to this, how can there be a trafficking crime that doesn't have the comparable intent to the Control of Substance Act of where you have the intent to distribute cocaine? There cannot in Georgia, in practice, despite the statute being worded slightly differently from the federal felony statute, if someone has been convicted of trafficking based on the possession of 28 grams or more, they have necessarily been convicted of possession with intent to distribute. The only outlier is that Hancock case, and I do believe that's explained by the type of argument Mr. Hancock made. If I was, when I read the Hancock, I would have thought if I was Hancock, I would argue if I was acquitted of the lesser included offense, how could I have been convicted of the greater offense given Jackson and Praval? Can I ask you one question before we run out of time? I want to make sure, this may be like the hinge for me in this entire case. I want to ask you about the Mathis peak. Yes. So I'll go back and check, but I thought that Mathis said that you could take a peak at these documents, the indictment, the verdict form, but only to determine whether we should be applying a categorical rule or a modified categorical rule. And here we all agree that we're applying a categorical rule. And so is the Mathis peak still available to us, or now that we're in categorical land, are we looking at elements as defined by the statute and perhaps by the Georgia courts? Right. In Mathis, the peak was referenced with respect to the modified categorical, whether we're to determine whether the divisibility, whether there are means or elements. But the peak goes back to the fact that Mathis advises to look at authoritative sources of state law, and that's probably the lowest level of one. And looking at the authoritative sources of state law applies to both levels, the very first level and the second level. We cannot just look at this statute in a vacuum. We need to—it is more straightforward if you do that, but you end up with anomalies, and you don't end up with what actually someone is being convicted under Georgia law. What is the minimum conduct criminalized? And to figure the minimum conduct criminalized, we look at the elements and how those elements are defined by the Georgia state, in this case the Georgia state courts, and they have defined it as including a possession with intent to distribute. Thank you very much. Thank you. Appreciate it. Thank you, Your Honors. All right. Three minutes. Thank you, Your Honors. So quickly, I noticed that the government sort of switched positions on what the peak includes going to Judge Newsom's analysis. Everybody agrees that this statute is indivisible, so we're using the categorical approach. The peak only comes, again, if you're looking at the modified, should be applied here. And so we don't get to peak at the indictment on count one and say, oh, while we're here, let's also peak at count two that she wasn't actually convicted of. Yes, the jury found the verdict, but because she wasn't sentenced on it, it's not an issue before us today. So we know what the elements of this offense are, and nobody has even included a conversation about the jury instructions here. So if you go and look at the jury instructions, again, intent to distribute is nowhere to be found. Are they in the record, the jury instructions in the record? They are not. I mean, we cite it to them, but they were not in the record that we included. And going to your point, Judge Royal, with regard to an intent to distribute, I know it seems crazy to have a trafficking that the name of the statute is trafficking. But when we look at the actual statute, and this was at issue in Cintron. I mean, if you go look at Cintron and in Yolo Francisco, those were named trafficking statutes in Florida. And this court still found that under the INA that the elements of those offenses did not rise to the level of an aggravated felony drug trafficking offense as defined in Lopez. And so I agree. We're going to end up with this weird anomaly, but that same fact pattern happened in Cintron. You have the same three-tier structure in Florida that you do in Georgia. So this court has already felt comfortable creating that anomaly. And furthermore, going to the lesser included point, I looked for a long time and could never find a Supreme Court case saying, look, let's look at what the lesser included offenses are. They consistently said and clarified further over the years that we only care about what the elements a jury must find beyond a reasonable doubt. And we know both from the jury instructions and the case law that you do not have to find beyond a reasonable doubt that a person had a possession with an intent to distribute. Let's assume we don't take a peek at anything except Jackson and Gilbert. I just looked at Gilbert. It does say what he says. And Jackson is the latest case. Hancock and Moran are much older. Jackson even cites Moran. Why do we not follow Georgia law that says it's a lesser included offense? There are no, I mean, Jackson says there are no elements in the trafficking that are not already in the possession with intent. Right. I think Jackson is. Why don't we, if we just had only Jackson, do you lose if we only have Jackson? Because it's not in the statute on the statutory. If you focus on the first part of Jackson, I think it's page 905, where they're discussing the trafficking offense itself. And the individual, the defendant, is contesting, you know, that a jury could have found him guilty of trafficking. And they looked at it and said, no, we can say that a reasonable fact finder could safely found that you possess over 28 grams of cocaine. There was evidence that you possessed 110 grams. So Jackson, I think, answers us the question. And, again, in Cintron and Ugo or Francisco, they were lesser included in those cases as well. Florida had the lesser included as a possession with intent to distribute. So I think it would be in conflict for the court to find otherwise that this is not. But was there a Florida case saying everything that's in the possession with intent is also in the trafficking? Yes, and that permissive inference was also discussed in James as discussed in White. And both of those are 11th Circuit cases. So I know my time is running out here, but I would say that clearly there is conduct outside. But White doesn't help you, neither does James. I think White does help me because White says that in the same way that you could have the inference in Madera Madera, you could have that inference in the Alabama statute. And James does help me because it said in those statutes as well, given the amount, that we can infer into the Florida statute. So if you can infer into the Florida statute in James in an ACCA context, then Cintron, which just came out, would be completely in conflict. And so, again, I think this court must have considered those same issues in Cintron and Ugo or Francisco. And I would ask that the court find the statute overbroad and remand to the board for consideration of cancellation. Thank you for your time. Thank you. And I see that you took the case pro bono. We appreciate your service to the court. Yes. All right.